LOCKE LORD LLP
Andrew M. Braunstein
William D. Foley, Jr. (*pro hac vice* forthcoming)
Jeffrey S. Kramer (*pro hac vice* forthcoming)
200 Vesey St., 20th Fl.
New York, NY 10281

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| FORA FINANCIAL HOLDINGS, LLC<br><br>                 Plaintiff,<br>vs.<br><br>DREAM DATA SERVICES, LLC, ALAN TUNIT,<br><br>                 Defendants. | Case No. 23-cv-0780<br><br>*Filed Electronically* |

**COMPLAINT**

Plaintiff Fora Financial Holdings, LLC ("Fora Financial"), by and through its attorneys, Locke Lord, LLP, as and for its Complaint against defendants Dream Data Services, LLC ("Dream Data") and Alan Tunit ("Tunit," and collectively, "Defendants") alleges as follows:

**NATURE OF THE ACTION**

1. This is an action for equitable and legal relief based on Fora Financial's discovery that Dream Data, LLC and its principal Alan Tunit, obtained some of Fora Financial's most valuable trade secret information and has been selling it to Fora Financial's competitors. Fora Financial brings this action for violations of the federal Defend Trade Secrets Act ("DTSA"), violations of New Jersey's Trade Secrets Ace (N.J.S.A. 56:15-1), and tortious interference with prospective economic advantage.

2. Fora Financial provides commercial financing and working capital for small businesses across the country in the form of business loans and purchases of accounts receivables.

1

Fora provides an alternative for merchants who do not wish to wait through the application process with their bank or SBA-lenders. Customers seeking new or renewal financing from Fora Financial submit, either directly or indirectly through independent sales organizations ("ISOs") or brokers, applications and other related documents containing, among other things, customer contact information, government-issued identification numbers, the proposed financing terms, and company financial information like revenue and bank statements.

3. This information, as well as the very fact that a merchant is seeking the type of financing Fora Financial provides, is crucial to Fora Financial's business. Consequently, Fora Financial spends significant time, money and effort on developing, compiling, and maintaining such information. Fora also spends significant time, money and effort to ensure the secrecy of all of this information (Fora's "Protected Information") and to protect it from disclosure.

4. Late last year, Fora Financial began receiving complaints from customers—directly and through certain ISOs and brokers—that Fora Financial's competitors were contacting them almost immediately after they submitted applications to Fora Financial. The competitors were using Fora Financial's Protected Information to attempt to switch Fora Financial's customers' business to the competitors'.

5. Immediately, Fora Financial began investigating how its trade secret confidential information was ending up in the hands of competitors. As set forth in more detail below, "honeypot" deals containing a mix of real customer names and Fora Financial-controlled contact information were placed into Fora Financial's computer system. These "honeypot" applications existed only in Fora Financial's system. Accordingly, if anyone called or text messaged the Fora Financial-controlled cell phone number intending to reach the listed customer, then Fora Financial knew that data was obtained from its system.

6. Within a day or two of the first "honeypots" being placed into Fora Financial's system, agents from competitors started calling and text messaging the Fora Financial-controlled phone numbers, attempting to solicit Fora Financial's customers.

7. Using these "honeypots" and information obtained from its competitors and other third-party lead data providers, Fora Financial determined that Dream Data and Alan Tunit are the sources providing Fora Financial's trade secret information (including but not limited to the "honeypot" data) to Fora Financial's competitors.

8. Dream Data's and Tunit's unauthorized acquisition, possession and use of Fora Financial's Protected Information violates the federal Defend Trade Secrets Act, the New Jersey Trade Secret Act and other laws.

9. As a direct result of Defendants' misconduct, Fora Financial has suffered irreparable harm. Fora Financial's Protected Information has been disclosed to its competitors, who have used it to try to steal or divert business. Defendants' misconduct has caused injury to Fora Financial's long-standing relationships with customers and ISOs, as well as damage to Fora Financial's goodwill with its ISO and broker partners. Defendants presently possess Fora Financial's Protected Information and must be enjoined from continuing to use and disclose it.

**PARTIES**

10. Plaintiff Fora Financial Holdings, LLC is a limited liability company formed under the laws of the state of Delaware, with its principal place of business in New York, New York.

11. Defendant Dream Data, LLC is a limited liability company registered to do business in the state of New Jersey, with its principal place of business in Manalapan, New Jersey.

12. Upon information and belief, Alan Tunit is an individual residing at 3 Brandywine Court in Manalapan, New Jersey. He is the sole member of Dream Data, LLC.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Fora Financial's cause of action under the DTSA, 18 U.S.C. 1832 *et seq.*, presents a federal question.

14. This Court has supplemental subject matter jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a). The state claims asserted herein are intimately related to the DTSA claim, are built on the same factual predicate, and are part of the same case or controversy.

15. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because Dream Data and Tunit reside in this District, and a substantial part of the events giving rise to Fora Financial's claims occurred in this District.

## FACTS COMMON TO ALL COUNTS

*Fora Financial's Business*

16. Fora Financial is a commercial lender and financial services company based out of New York, New York.

17. Fora Financial provides commercial financing and working capital solutions for small businesses across the country through business loans and purchases of accounts receivables.

18. The small business lending market is incredibly competitive, making Fora Financial's ability to identify and quickly secure the business of merchants seeking the type of financing Fora Financial provides critical to its business. Consequently, Fora Financial spends and has spent a significant amount of time, money and effort to solicit merchants and small businesses to become customers of Fora Financial. Fora Financial works closely with independent sales organizations ("ISOs") and brokers to identify potential customers, solicit applications for financing, and negotiate financing terms and other business deals. Fora Financial's relationships

with those ISOs and brokers is a crucial part of its business and Fora Financial has invested a large amount of time, money and effort in developing and maintaining those relationships.

19. Customers seeking financing from Fora Financial complete and then submit applications to Fora Financial, either directly or through ISOs and brokers. The applications contain various types of confidential, business-sensitive information and trade secrets, including, but not limited to, the customers' contact information, government-issued identification numbers, the terms of the proposed financing and the customers' non-public financial information, like revenues and bank statements. Moreover, the very fact that any particular small business is seeking financing with Fora Financial is, in itself, an important and confidential piece of information, the secrecy of which Fora Financial protects. Retaining and protecting this information from disclosure gives Fora Financial a competitive edge in renewing customers' financing deals and sourcing new deals. This trade secret and confidential information, were it made known to or used by Fora Financial's competitors, would give competitors a significant unfair advantage against Fora Financial in the competition for customers' business.

*Fora Financial's Protected Information are Trade Secrets*

20. Fora Financial has spent and invested a substantial amount of time, labor, and capital in developing, compiling, maintaining, and updating a proprietary database of customer information. Fora Financial's Protected Information is detailed and comprehensive. That data consists of far more than just names, including a full historical record of its customer relationships, the terms of Fora Financial's deals to provide financing to its customers, and the customers' non-public financial information, like revenues and bank statements.

21. There are no publicly available lists of Fora Financial's customers or the trade secret information Fora Financial possesses concerning those customers. The overwhelming

majority of the proprietary information Fora Financial maintains is not publicly available and is not available from any source in the format and level of detail that Fora Financial retains it. Rather, Fora Financial's confidential customer data is gathered and compiled by Fora Financial through countless numbers of communications and interactions with individual customers, ISOs, brokers and others.

22. Fora Financial derives substantial economic value from preserving as trade secrets its customer identification information and customer confidential information. In particular, the confidential and non-public fact that a customer needs small business financing at the exact moment that customer submits an application to Fora Financial is incredibly valuable information to Fora Financial's business.

23. A competitor of Fora Financial that obtained Fora Financial's confidential trade secret information could readily solicit Fora Financial's customers at the exact time said customer sought and/or needed small business financing. Armed with Fora Financial's confidential information, any such competitor would receive an unfair business advantage in soliciting Fora Financial's customers.

***Fora Financial Takes Extensive Measures to Protect its Confidential Information***

24. Fora Financial expends significant time, resources, and money in protecting the confidentiality and secrecy of its trade secret, confidential, and proprietary information (the "Protected Information"), including electronically stored information.

25. Access to Fora Financial's systems, including emails and shared drives, is password protected, subject to multi-factor authentication when supported and controlled by a central administrator. Fora Financial enforces strong password policies (requiring the use of upper case letters, lower case letters, numbers, and symbols).

26. Fora Financial stores the Protected Information on a cloud storage system with a "zero trust" framework, meaning that the system requires all users, inside or outside the network, to be authenticated, authorized and continuously validated for security configuration and posture before being granted or keeping access to applications and data.

27. Fora Financial deploys endpoint virus protection, as well as a multilayer defense that permits Fora Financial to monitor, detect and prevent threats to its systems.

28. Some Fora Financial employees access Fora Financial's system remotely. Any such remote access to Fora Financial's system occurs through Zscaler, a cloud security company. Among other security measures, Zscaler prevents access to public websites and can prevent the downloading of data to a device's local drives while working remotely.

29. Fora Financial's policy is to terminate an employee's access to Fora Financial's systems and files upon their last day of work. Fora Financial uses a single sign-on ("SSO") and multi-factor authentication security program called Okta, which controls an employee's access to Fora Financial's system. When an employee is terminated or otherwise becomes no longer employed by Fora Financial, their Okta access is revoked and access to Fora Financial's systems is removed.

30. Employees are required to return any devices, documents and information in their possession on their last day of work for Fora Financial.

31. Fora Financial also engages in wide scale penetration testing and vulnerability assessments in order to test its security measures and systems.

*Dream Data's Business*

32. Dream Data is a "lead generation" company.

33. Dream Data obtains and then sells leads and lead data, including leads and lead data related to customers seeking the types of business loans and financing that Fora Financial provides.

34. Dream Data sells leads and lead data to competitors of Fora Financial that use the leads and lead data to solicit their products to customers.

35. Dream Data also sells leads and lead data to other "lead generation" companies, who themselves resell those leads and lead data, sometimes to Fora Financial's competitors.

36. Upon information and belief, Dream Data obtains its leads and lead data from people or entities located outside the United States. Those people and/or entities connect with Tunit and Dream Data through, among other ways, social media websites. They contact Tunit and Dream Data through email, private messaging and on group pages on social media websites to solicit Tunit and Dream Data to purchase leads and lead data related to U.S. businesses.

37. Dream Data and Tunit receive the leads and lead data by email or other electronic means, most often in the form of Excel spreadsheets. The leads and lead data sometimes include obviously sensitive documents of the U.S. businesses, like bank statements and/or the personally identifiable information of the businesses' personnel, including social security numbers.

***Fora Financial Learns of the Misappropriation***

38. In the fall of 2022, Fora Financial received reports from certain ISOs and other brokers that customers who had submitted applications to Fora Financial were being solicited by Fora Financial's competitors.

39. Around the same time, Fora Financial received similar reports directly from customers around the country who had submitted applications to Fora Financial that these customers also were receiving unwanted calls and text messages from competitors.

40. Competitors who were contacting Fora Financial's customers using Fora Financial's Protected Information included New York Tribeca Group, LLC ("Tribeca"), Creditors Relief LLC ("Creditors"), and Premium Merchant Funding ("PMF").

41. The contents of the communications between the competitors' agents and Fora Financial's customers demonstrated to Fora Financial that these competitors possessed Fora Financial's Protected Information.

42. The communications showed that Fora Financial's competitors possessed and were using Fora Financial's Protected Information, including customer contact information, customer business information (including in some cases customer revenue and bank statements), and information about the proposed financing terms.

43. Many Fora Financial customers expressed surprise and anger (to Fora Financial, to the ISOs and brokers and to competitors themselves) about the fact that they were being solicited by Fora Financial's competitors, with some customers even assuming wrongly that Fora Financial had sold or in some other way authorized the disclosure of the information.

44. Specifically, on at least ten occasions since September 2022, Fora Financial customers directly informed Fora Financial sales personnel that Fora Financial's competitors had contacted them and solicited them to enter into financing deals. The customers were informed by Fora Financial's competitors that they were in possession of proposed financing terms, bank statements, credit scores, customer contact information and other business-sensitive information that those customers had exclusively submitted to Fora Financial.

45. In addition, ISOs and brokers notified Fora Financial that dozens of customers who had submitted applications to Fora Financial had communicated to the ISOs and brokers that the customers were being contacted by Fora Financial's competitors who were soliciting them to enter

into financing deals immediately after the submission of applications to Fora Financial. Two ISOs provided Fora Financial with lists of 31 and 22 merchants, respectively, that Fora Financial's competitors had solicited using Fora Financial's Protected Information, including bank statements, proposed financing terms, customer contact information and other personal and business-sensitive information.

46. Many of the impacted customers expressed serious concerns that this information had been made public or shared with entities other than Fora Financial.

47. In some instances, customers were receiving calls or text messages to their personal cell phones every fifteen minutes. Many of those customers expressed to Fora Financial and their brokers that they had only submitted applications to Fora Financial. Other customers threatened to pull their applications from Fora Financial. Certain ISOs and brokers who were involved in facilitating Fora Financial's deals with the impacted customers stopped submitting applications to Fora Financial.

***Fora Financial Confirms That Dream Data Sold the Misappropriated Protected Information***

48. Shortly after receiving notice of the unauthorized use of its confidential trade secret information, Fora Financial immediately began investigating if and how its Protected Information was being misappropriated.

49. On or around September 14, 2022, Fora Financial planted "honeypot" application traps in its system to show that the information Fora Financial's competitors possessed could have been obtained only from Fora Financial's system. Fora Financial also used the "honeypot" traps to determine the source of the theft of the Protected Information.

50. The "honeypot" application traps contained a mix of real customer information and "fake" information planted and monitored by Fora Financial.

51. For instance, cell phone numbers owned by Fora Financial were listed as contact information for the names of real customers. Thus, when applications or the data on those applications were accessed and disclosed without authorization, the recipients of that data would, when attempting to contact the listed customers to solicit their business, instead contact employees of Fora Financial, who would document the interaction.

52. In other instances, Fora Financial created fake merchant names on the applications. Anyone who received this information as a "lead" could run a simple internet search to determine that the businesses Fora Financial created do not actually exist.

53. The "honeypot" application traps were then placed into Fora Financial's system.

54. Thereafter, Fora Financial's cell phones associated with the "honeypot" traps immediately began receiving phone calls and text messages from competitors soliciting customers for financing. Fora Financial tracked its interactions with competitors who contacted "honeypot" numbers to solicit Fora Financial's customers. In just under two weeks, competitors had contacted "honeypot" customers nearly 20 times. Those competitors included Tribeca, Creditors, and PMF.

55. The data on the "honeypot" application traps was used by those in possession of it to solicit Fora Financial's customers to switch their business to competitors.

56. To stop the unauthorized use of its confidential trade secret information, Fora Financial commenced litigation against one of its competitors and entered into negotiations with others.

57. Through the litigation and negotiations, Fora Financial discovered that Dream Data and Alan Tunit are the ultimate sources of all the Fora Financial Protected Information that those competitors possessed. Some of the competitors purchased the information directly from Dream

Data and Tunit. Others purchased the information from third-party lead generators, who themselves had purchased the information from Dream Data and Tunit.

58. Fora Financial's competitors used the confidential trade secret information Dream Data and Tunit disclosed to them to solicit Fora Financial's customers.

59. The merchants, including those using "honeypot" information, that were ultimately contacted or attempted to solicit using Fora Financial's Protected Information *using Lead Data purchased from Dream Data* include:

- Capital Cabinet and Closet Solutions LLC dba Bienal USA;
- DiMeglio Enterprises, Inc. dba Floor Coverings Int'l –Wake Forest;
- All Town Services LLC;
- Bar 1903 LLC;
- David J Peterson Trucking d/b/a Boxwood Cabinetry & Design;
- Frazier Ambus Logistic LLC d/b/a Fall guys;
- Deidre Dixon Marketing LLC dba Walcot Walcot Studio;
- Sunwest LLC dba Sunwest;
- Simms Automotive Repair LLC;
- Fully Equipped;
- Rocky Allen;
- Robian's Paintings;
- T&S Auto;
- ADMI;
- Arsenal Logistics;
- Anthony Acosta Gadgets;
- Mulligans Auto Exchange;
- Durkee Fencing;
- K&V Home Improvements Inc.;
- R.I Unique Marble and Granite;
- Acetunes/All American;
- Blue Sabre Management;

12

- Schneider Audio Visual Systems Inc.;
- Mclain's Sporting Goods Stores LLC;
- Tattoo Removal Inc.;
- April Valdez (Paul);
- Takeoff Performance Systems LLC;
- Schmett & Company;
- JV Business Services;
- Quick Arrivals Transportation;
- Neolight, LLC;
- Lonestar Mechanical & Plumbing;
- Waymaker Logistics, LLC;
- Town of Mountainair;
- American Z & J Express, Inc.;
- Palmetto Heating & Cooling;
- Ross Muzik Global;
- Star Training Services, LLC;
- Richard Stonecipher Interiors Inc.;
- Mamlaka I Inc.;
- Gamers Guild AZ LLC;
- IndieBox Inc.;
- LMN Hospitality.

60. Defendants sold Fora Financial's Protected Information related to the above merchants – including the "honeypot" data – to Fora Financial's competitors or to other lead generators who then sold that data to Fora Financial's competitors.

61. The Protected Information that Defendants sold contained documents and information that could have been obtained only from Fora Financial without authorization, including merchant bank statements.

62. Upon information and belief, Defendants obtained the Protected Information from sources outside the United States in the manner Fora Financial described above.

63. Accordingly, Fora Financial has suffered, and very likely will continue to suffer, irreparable harm from the disclosure and/or use of its Protected Information, which is still in Dream Data's possession.

**COUNT I**
**VIOLATION OF THE DEFEND TRADE SECRETS ACT (18 U.S.C. § 1832 *et seq.*)**
**(ALL DEFENDANTS)**

64. Fora Financial repeats and realleges each and every allegation contained in paragraphs 1 through 63 hereof as if fully set forth herein.

65. The facts pleaded above constitute actual and threatened misappropriation of trade secrets by Defendants in violation of the federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1832 *et seq.*, in one or more of the following respects.

66. Fora Financial's trade secrets misappropriated by Defendants, including customer contact information, customer business information, the terms of Fora Financial's financing deals with customers and other information identified above, are related to a service used in interstate commerce.

67. Defendants have, without authorization, acquired, used and disclosed, and continue to possess, Fora Financial's trade secrets to sell highly desirable lead information to Fora Financial's competitors.

68. The trade secrets belonging to Fora Financial that were misappropriated by Defendants have been subject to reasonable efforts by Fora Financial to maintain their secrecy and/or confidentiality. Fora Financial's trade secret information is not generally known or available to the public, particularly in the form and manner in which Fora Financial retains it.

69. Fora Financial's confidential information is considered a trade secret under the DTSA because Fora Financial derives independent economic value from this information not being generally known to the public, the information is not readily ascertainable by proper means by persons who could obtain economic value from its disclosure or use, and the information is the subject of reasonable efforts to maintain its secrecy.

70. Defendants have misappropriated Fora Financial's trade secrets by, among other ways, acquiring them without authorization and then selling them directly to Fora Financial's competitors who, in turn, use them to solicit Fora Financial's customers to enter into financing deals in direct competition with Fora Financial.

71. Defendants knew or should have known at the time they acquired, used and/or disclosed Fora Financial's trade secret information that such information had been obtained and/or acquired through improper means. Defendants' knowledge or constructive knowledge that the information was obtained through improper means is based on, among other things, the non-public nature of the information and the sources from which Defendants obtained the information.

72. Fora Financial faces the threat of continued misappropriation of its trade secret information based on, among other things, Defendants' continued possession of and failure to return and/or destroy the information.

73. Fora Financial faces a threat of continuing irreparable harm, for which it lacks an adequate remedy at law, from Defendants' misappropriation and and threatened misappropriation of Fora Financial's trade secrets.

74. Unless Defendants are enjoined from the foregoing conduct, Fora Financial will be irreparably harmed by:

    a.    Continued misappropriation of Fora Financial's trade secret information, and other confidential information that is solely the property of Fora Financial;

      b.      Disclosure to competitors of Fora Financial's trade secret information, and other confidential information that is solely the property of Fora Financial;

      c.      Loss of confidentiality and trade secret status of information regarding customer, deal and other business-sensitive information;

      d.      Imminent loss of customers and relationships with ISOs and brokers;

      e.      Imminent loss of goodwill; and

      f.      Current and potential future economic loss, which is presently incalculable.

75. Defendants' egregious misconduct constitutes a willful and malicious misappropriation of Fora Financial's trade secrets.

76. Fora Financial is entitled to injunctive relief, restitution, compensatory damages pursuant to 18 U.S.C. § 1832 and attorney's fees.

**COUNT II**
**VIOLATION OF NEW JERSEY TRADE SECRETS ACT (N.J.S.A. 56:15-1, *et seq.*)**
**(ALL DEFENDANTS)**

77. Fora Financial repeats and realleges each and every allegation contained in paragraphs 1 through 76 hereof as if fully set forth herein.

78. Fora Financial owns its Protected Information, as defined and described herein. The Protected Information are trade secrets.

79. Fora Financial derives independent economic value from its Protected Information not being generally known to, or readily ascertainable through proper means by, other persons who can obtain economic value from its disclosure or use.

80. Fora Financial has taken significant measures to maintain the confidentiality and secrecy of its Protected Information, including but not limited to restricting access to the Protected Information.

81. As described herein, Defendants misappropriated, continue to misappropriate, and will misappropriate Fora Financial's trade secrets by acquiring them without authorization and selling them to, among others, Fora Financial's competitors.

82. Defendants knew, and know, or should have known, that the information they obtained containing Fora Financial's Protected Information included trade secrets.

83. Defendants' conduct has been, and is, willful, malicious, wanton, and intended to damage the business of Fora Financial.

84. By virtue of the alleged conduct, Defendants misappropriated Fora Financial's trade secrets in violation of N.J.S.A. 56:15-1, *et seq*.

85. As a direct and proximate result thereof, Fora Financial has been and will continue to be irreparably harmed.

86. Further, Defendants' misappropriation of Fora Financial's trade secrets has and will continue to damage Fora Financial in an amount to be determined at trial.

87. In addition to the money damages alleged in Paragraph 86, Fora Financial's remedy at law is inadequate.

88. Fora Financial is entitled to receive punitive damages and recovery of its attorney's fees and costs under this statute.

**COUNT III**
**TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**
**(ALL DEFENDANTS)**

89. Fora Financial repeats and realleges each and every allegation contained in paragraphs 1 through 88 hereof as if fully set forth herein.

90. The elements of tortious interference with prospective economic advantage are (1) a reasonable expectation of economic advantage; (2) the defendants intentionally interfered with

that interest; (3) the harm was inflicted without justification or excuse; and (4) the interference caused the loss of that interest.

91. Fora Financial had business relationships with: (i) the customers who submitted applications to Fora Financial and (ii) the ISOs that facilitate and source deals for Fora Financial. Thus, Fora Financial had a reasonable expectation of economic advantage from those relationships.

92. As described herein, Defendants interfered with Fora Financial's relationships both with its customers and the ISOs by using Fora Financial's misappropriated trade secrets for their own economic benefit when they misappropriated and sold that information to Fora Financial's competitors.

93. Defendants' conduct interfered with Fora Financial's relationships with its customers by providing leads and lead data containing Fora Financial's Protected Information to competitors that ultimately caused some customers to switch their business and/or fail to enter into anticipated deals with Fora Financial.

94. Moreover, Defendants' sale of the Protected Information caused some customers to believe that Fora Financial itself had sold or authorized the disclosure of the data, which damaged Fora Financial's relationships with those customers and its ISO partners.

95. There is no justification or excuse for Defendants' misconduct.

96. As alleged herein, Defendants' misconduct caused Fora Financial monetary damages to be calculated at trial and non-monetary damages in the form of loss of goodwill, among other things.

## **PRAYER FOR RELIEF**

WHEREFORE, Fora Financial requests judgment as follows:

a. granting preliminary and permanent injunctive relief requiring Defendants to return to Fora Financial all property belonging to Fora Financial including but not limited to documents or materials containing Fora Financial's trade secret and confidential information in their possession, custody, or control or to which they have access, and, as to any such property containing electronically stored information (ESI), inform Fora Financial of all such ESI so that it can permanently delete or destroy and eliminate access to such information by Defendants and any and all persons acting in concert with them;

b. granting preliminary and permanent injunctive relief enjoining Defendants and all persons acting in concert with them from accessing, disclosing, using, or otherwise misappropriating Fora Financial's confidential information and trade secrets;

c. granting Fora Financial compensatory and punitive damages in an amount to be determined;

d. awarding Fora Financial its reasonable attorney's fees and costs;

and

e. such other and further relief as the Court deems just and proper.

LOCKE LORD LLP

s/ *Andrew M. Braunstein*
Andrew M. Braunstein
William D. Foley, Jr. (*pro hac vice* forthcoming)
Jeffrey S. Kramer (*pro hac vice* forthcoming)
200 Vesey Street, 20th Floor
New York, NY 10281
(646) 217-7722

*Attorneys for Plaintiff Fora Financial Holdings, LLC*

Dated: February 10, 2023

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2

  Pursuant to Local Civ. Rule 11.2, the undersigned hereby certifies that the matter in controversy is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding.

               By: *s/ Andrew M. Braunstein*
                 Andrew M. Braunstein

Dated: February 10, 2023