**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| FORA FINANCIAL HOLDINGS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>DREAM DATA SERVICES, LLC, *et al.*,<br><br>Defendants. | Civil Action No. 23-00780 (GC) (JBD)<br><br>**MEMORANDUM OPINION** |

**CASTNER, U.S.D.J.**

**THIS MATTER** comes before the Court upon Defendants Dream Data Services, LLC, and Alan Tunit's joint Motion to Dismiss, pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), Plaintiff Fora Financial Holdings, LLC's Complaint. (ECF No. 7.) Plaintiff opposed, and Defendants replied. (ECF Nos. 10 & 13.) The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Rule 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, and other good cause shown, Defendants' motion is **GRANTED** in part and **DENIED** in part.

## I.      BACKGROUND

### A.  FACTUAL BACKGROUND

This matter involves claims that Defendants Dream Data, a limited liability company based in Manalapan, New Jersey, and its principal and sole member Alan Tunit, a resident of Manalapan, wrongfully acquired and then resold Plaintiff Fora Financial's sensitive customer information to competitors of Fora Financial in violation of the federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, *et seq.*; in violation of the New Jersey Trade Secrets Act ("NJTSA"), N.J. Stat.

Ann. § 56:15-1, *et seq.*; and as tortious interference with prospective economic advantage.[1]  (ECF No. 1 ¶¶ 1-12.[2])

Fora Financial is a commercial lender and financial services company based in New York, New York.  (*Id.* ¶ 16.)  It provides small businesses with commercial financial and working capital solutions through business loans and purchases of account receivables.  (*Id.* ¶ 17.)  The small business lending market is "incredibly competitive."  (*Id.* ¶ 18.)

Customers seeking financing from Fora Financial submit applications either directly or indirectly via independent sales organizations and/or brokers.  (*Id.* ¶ 19.)  The applications "contain various types of confidential, business-sensitive information and trade secrets, including . . . the customers' contact information, government-issued identification numbers, the terms of the proposed financing and the customers' non-public financial information, like revenues and bank statements."  (*Id.*)  Fora Financial has made substantial investments in developing and maintaining a database of detailed customer information.  (*Id.* ¶ 20.)  The database includes a full historical record of Fora Financial's customer relationships.  (*Id.*)  There are no publicly available lists of the customers or the information Fora Financial maintains on each customer.  (*Id.* ¶ 21.)

Fora Financial "takes extensive measures to protect its confidential information," including password-protecting its emails and shared drives (which may be subject to multi-factor authentication); storing information on a cloud storage system that requires all users to be authenticated; deploying endpoint virus protection to protect its systems from threats; preventing employees working remotely from downloading data to a device's local drive; terminating employees' access to systems on their last day of work and mandating the return of all documents

---

[1]      The Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331.

[2]      Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

and devices; as well as engaging in wide-scale penetration testing and vulnerability assessments. (*Id.* ¶¶ 24-31.)

Dream Data obtains and sells leads and lead data, including information related to customers seeking the types of business loans and financing that Fora Financial provides. (*Id.* ¶ 33.) Dream Data obtains the leads and lead data from people or entities outside the United States, connecting with them through social media websites, email, or other electronic means. (*Id.* ¶¶ 36-37.) It sells this information to, among others, competitors of Fora Financial and those who resell the information to competitors of Fora Financial. (*Id.* ¶¶ 34-35.)

In the fall of 2022, Fora Financial received reports from certain independent sales organizations and brokers that customers who had submitted applications to Fora Financial were being solicited by its competitors. (*Id.* ¶ 38.) It received similar reports from customers that they were receiving unwanted calls and text messages from these competitors. (*Id.* ¶ 39.) Based on the contents of the communications, Fora Financial was led to believe that its competitors possessed Fora Financial's confidential information, including customer contact information, customer revenue and bank statements, and proposed financing terms. (*Id.* ¶¶ 41-42.)

On at least ten occasions since September 2022, Fora Financial's customers directly informed it that they had been contacted and solicited to enter into financing deals by competitors, and some of the customers expressed surprise and anger about the solicitations. (*Id.* ¶¶ 43-44.) Fora Financial was also indirectly informed by independent sales organizations and brokers that dozens of customers who submitted applications to Fora Financial had been contacted by its competitors, and Fora Financial was provided with lists of the merchants that its competitors allegedly solicited using Fora Financial's information. (*Id.* ¶¶ 45-46.) As a result, Fora Financial's customers threatened to pull their applications, and certain independent sales organizations and brokers stopped submitting applications to Fora Financial. (*Id.* ¶ 47.)

In response, and starting on or around September 14, 2022, Fora Financial planted "honeypot" application traps in its system to try to determine the source of the theft of its information.  (*Id.* ¶ 49.)  Cell phone numbers owned by Fora Financial were listed as the contact information for the names of real customers, and when data on the applications were accessed and disclosed without authorization, the recipients of the data would unknowingly contact employees of Fora Financial who would document the interaction.  (*Id.* ¶¶ 50-53.)  Fora Financial's competitors soon began contacting the "honeypot" traps (nearly 20 times in two weeks), and Fora Financial then commenced litigation against one of its competitors and entered into negotiations with others to stop the unauthorized use of its confidential information.  (*Id.* ¶¶ 54-56.)

Through the litigation and the negotiations, Fora Financial learned that Dream Data and Alan Tunit were the "ultimate sources" of the business information that its competitors had obtained and were using to poach Fora Financial's customers.  (*Id.* ¶¶ 57-58.)  Fora Financial lists the names of the more than 40 customers that were contacted by its competitors using information and lead data purchased from Dream Data.  (*Id.* ¶ 59.)

## B.  PROCEDURAL BACKGROUND

On February 10, 2023, Fora Financial brought three causes of action against Dream Data and Alan Tunit: Violation of the DTSA (Count I); Violation of the NJTSA (Count II); and Tortious Interference with Prospective Economic Advantage (Count III).  (*See generally* ECF No. 1.)  Fora Financial seeks injunctive relief to require Defendants to return its property and to stop disseminating its confidential information as well as monetary damages.  (*Id.* at 18-19.)

On February 20, 2023, Dream Data and Alan Tunit moved to dismiss the Complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted, also asking the Court to stay discovery pending a decision on the motion.  (ECF No. 7.)  Fora Financial opposed on March 20, 2023, and Defendants replied on March 28, 2023.  (ECF Nos. 10 & 13.)

## II.   <u>LEGAL STANDARD</u>

On a motion to dismiss for failure to state a claim, courts "accept the factual allegations in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and assess whether the complaint and the exhibits attached to it 'contain enough facts to state a claim to relief that is plausible on its face.'" *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023) (quoting *Watters v. Bd. of Sch. Directors of City of Scranton*, 975 F.3d 406, 412 (3d Cir. 2020)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Clark v. Coupe*, 55 F.4th 167, 178 (3d Cir. 2022) (quoting *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 372 (3d Cir. 2019)). When assessing the factual allegations in a complaint, courts "disregard legal conclusions and recitals of the elements of a cause of action that are supported only by mere conclusory statements." *Wilson*, 57 F.4th at 140 (citing *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 903 (3d Cir. 2021)). The defendant bringing a Rule 12(b)(6) motion bears the burden of "showing that a complaint fails to state a claim." *In re Plavix Mktg., Sales Pracs. & Prod. Liab. Litig. (No. II)*, 974 F.3d 228, 231 (3d Cir. 2020) (citing *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016)).

## III.   <u>DISCUSSION</u>

### A.   Counts I & II – Violations of the DTSA & NJTSA

Defendants move to dismiss the trade-secret claims under the DTSA and NJTSA on two grounds. *First*, they argue that the information allegedly taken from Fora Financial "is not a trade secret. Rather, that information that is derived from potential borrowers, customers – directly, or indirectly – does *not* constitute trade secrets because they are publicly known to borrowers, and apparently, disclosed to loan brokers, and/or [independent sales organizations]. It is not internal to the Plaintiff, and certainly, it is not protected by any form of agreement. . . .  The information

from direct applications from the borrowers, or potential borrowers, . . . do not constitute a trade secret because that information can be shared by the borrower with anyone the borrower so chooses." (ECF No. 7-1 at 6-7 (emphasis in original).)  *Second*, Defendants argue that Fora Financial has "not sufficiently allege[d] [that] Defendant[s] knowingly converted such trade secrets for [their] own benefit, or the benefit of anyone else." (*Id.* at 7.)  They contend that the Complaint does not plausibly allege that Defendants "accessed Plaintiff's systems, or otherwise colluded with anyone that did access their systems," nor that Defendants "knew or should have known that the information . . . originated from the Plaintiff." (*Id.* at 7-8.)  After careful consideration of these arguments, the Court finds that neither ground prevails; Fora Financial has plausibly pled each element of its trade-secret claims.

"Both the DTSA and the NJTSA require claimants to demonstrate (1) the existence of a trade secret, defined broadly as information with independent economic value that the owner has taken reasonable measures to keep secret, and (2) misappropriation of that secret, defined as the knowing improper acquisition and use or disclosure of the secret." *Par Pharm., Inc. v. QuVa Pharma, Inc.*, 764 F. App'x 273, 278 (3d Cir. 2019) (first citing 18 U.S.C. §§ 1836(b)(1), 1839(3); and then citing N.J. Stat. Ann. § 56:15-2); *see also On Location, Inc. v. Popovich*, Civ. No. 22-00893, 2023 WL 2674843, at *2 (D.N.J. Mar. 29, 2023).

As to the existence of a trade secret, Fora Financial alleges that the information wrongfully taken from it includes "customer contact information, customer business information (including in some cases customer revenue and bank statements), and information about the proposed financing terms" that it has offered potential customers as well as information related to when a customer needs small business financing and has submitted an application. (ECF No. 1 ¶¶ 22, 42.) Fora Financial also describes the various measures it has implemented to keep this information confidential, including password-protection, multi-factor authentication, virus prevention,

restricting how employees may remotely access the data, and requiring the return of all such information upon an employee's departure from the company. (*Id.* ¶¶ 24-31.)

At this stage, these allegations are sufficient to establish the existence of a trade secret. Defendants emphasize that much of the information alleged to have been taken is known to the customers who approach Fora Financial for financing and/or to brokers and others who help connect Fora Financial with prospective customers, but the United States Court of Appeals for the Third Circuit has repeatedly indicated that "[a] confidential compilation and organization of public information can amount to a trade secret." *Mallet & Co. v. Lacayo*, 16 F.4th 364, 386 (3d Cir. 2021); *accord Rohm & Haas Co. v. Adco Chem. Co.*, 689 F.2d 424, 433 (3d Cir. 1982) ("[E]ven though each and every element . . . is known to the industry, the combination of those elements may be a trade secret.").

Moreover, courts in this district, as elsewhere, regularly find that business information such as client lists, customer information, and information on loan applications – which is at issue in this case – can rise to the level of a protectable trade secret. *See, e.g.*, *Paramount Residential Mortg. Grp., Inc. v. Nationwide Mortg. Bankers, Inc.*, Civ. No. 22-4656, 2023 WL 3736385, at *5 (D.N.J. May 31, 2023) ("New Jersey state and federal courts have consistently held that critical business information such as client lists, sensitive and confidential customer information, loan application forms and documents, business data compilations, methods, techniques, and plans are protectable trade secrets. . . . More specifically, courts have found that customer lists including information on borrowers qualify as a trade secret." (collecting cases)); *Freedom Funding Grp. v. The Freedom Funding Grp. LLC*, Civ. No. 20-18404, 2022 WL 3681281, at *18 (D.N.J. Aug. 25, 2022) (in case involving dispute between two lending companies, the court found that "Plaintiff's customer lists and information qualify as trade secrets"); *Synergies Grp., LLC v. Andrews*, Civ. No. 18-13381, 2019 WL 3780098, at *6 (D.N.J. Aug. 12, 2019) ("Customer lists, pricing

information, and marketing techniques constitute trade secrets under New Jersey law and the DTSA."); *Lamorte Burns & Co. v. Walters*, 770 A.2d 1158, 1166 (N.J. 2001) ("In New Jersey, customer lists of service business have been afforded protection as trade secrets.").

As to misappropriation, Fora Financial alleges that Defendants acquired its trade secrets from persons and entities located outside the United States through social media websites, email, and other electronic means and then resold it to Fora Financial's competitors and those who resell the information to competitors of Fora Financial. (ECF No. 1 ¶¶ 35-37, 60-62.) Fora Financial further alleges that it discovered that Defendants were the "ultimate sources" of the misappropriation through litigation against and negotiating with its competitors. (*Id.* ¶¶ 56-58.)

Under the DTSA, misappropriation is "defined broadly as the knowing improper acquisition, or use or disclosure of the secret." *Oakwood*, 999 F.3d at 905 (citing 18 U.S.C. § 1839(5)); *see also id.* at 907-08 ("There are three ways to establish misappropriation under the DTSA: improper acquisition, disclosure, or use of a trade secret without consent."). The NJTSA's definition of misappropriation largely tracks the one in the DTSA. *Compare* 18 U.S.C. § 1839(5); *with* N.J. Stat. Ann. § 56:15-2; *see also Oakwood*, 999 F.3d at 905 n.11 ("Because the DTSA and the NJTSA are substantially similar . . . and . . . include identical or almost identical definitions for each statutory term at issue here, our analysis of the DTSA also applies to . . . the NJTSA.").

Fora Financial's allegations are sufficient to establish the element of misappropriation. It has pled that Defendants knowingly acquired Plaintiff's trade secrets (online from persons or entities outside the U.S.) and then used and disclosed those secrets (reselling them to Fora Financial's competitors) without Plaintiff's consent. Although the allegations do not detail precisely how Defendants may have done so, it is not unusual as such information is primarily in the control of Defendants, and Fora Financial does not need to detail the intricacies of how the misappropriation took place in order to plead a *prima facie* claim. *See Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009) ("[D]etailed factual allegations" are not required, but "more than an unadorned, the-defendant-unlawfully-harmed-me accusation[s]" must be pled.   (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007))).   Courts have recognized that discovery will often be needed in such cases to fill in factual gaps.   *See Austar Int'l Ltd. v. AustarPharma LLC*, 425 F. Supp. 3d 336, 356 (D.N.J. 2019) (McNulty, J.) ("[A] plaintiff 'need not make out specific allegations as to exactly how Defendants used or disclosed Plaintiff's trade secrets; there is no heightened pleading standard for a misappropriation claim, and Plaintiff is entitled to seek discovery to support [its] allegations setting forth a *prima facie* claim.'"   (quoting *Osteotech, Inc. v. Biologic, LLC*, Civ. No. 07-1296, 2008 WL 686318, at *5 (D.N.J. Mar. 7, 2008))).

## B.   COUNT III – TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

Defendants also move to dismiss the tortious interference with prospective economic advantage claim on various grounds, including that (1) Fora Financial has not plausibly pled "malice"; (2) "there is no plausible allegation that Defendant[s] acted with intent"; (3) "the Complaint is devoid of plausible allegations that but for the purported tortious interference Plaintiff would have consummated lending transactions with certain customers"; and (4) "Plaintiff fails to plead actual damages."   (ECF No. 7-1 at 9-11.)

Under New Jersey law,[3] a plaintiff bringing a claim for tortious interference with prospective economic advantage is "required to show [1] that it had a reasonable expectation of economic advantage, [2] which was lost as a direct result of [defendant's] malicious interference,

---

[3]     Even though Plaintiff's principal place of business is in New York, the parties both cite New Jersey law for the tortious interference claim.   (*See* ECF Nos. 7-1 & 10.)   Because this is the chosen approach of the parties and there appears to be no meaningful difference between the laws of the two states as to this specific claim, the Court will apply New Jersey law as well.   *See Varonis Sys., Inc. v. Sphere Tech. Sols., LLC*, Civ. No. 18-12055, 2019 WL 2119558, at *4 (D.N.J. May 14, 2019) ("The legal elements for . . . tortious interference with prospective economic advantage are the same in both New York and New Jersey."   (quoting *Hahn v. OnBoard LLC*, Civ. No. 09-03639, 2009 WL 4508580, at *7 (D.N.J. Nov. 16, 2009))).

and [3] that it suffered losses thereby." *Avaya Inc., RP v. Telecom Labs, Inc.*, 838 F.3d 354, 382 (3d Cir. 2016) (quoting *Ideal Dairy Farms, Inc. v. Farmland Dairy Farms, Inc.*, 659 A.2d 904, 932 (N.J. Super. Ct. App. Div. 1995)).

Where a plaintiff's tortious interference claim is predicated on a defendant's misappropriation and use of the plaintiff's trade secrets in order to solicit the plaintiff's existing or potential customers, courts have typically allowed the claim to be maintained, recognizing that courts do not need to "search[] far" to "find[] a reasonable expectation of economic benefit" and that "a reasonable expectation of economic gain" can be found "in as slight an interest as prospective public sales." *CLI Interactive, LLC v. Diamond Phil's, LLC*, Civ. No. 22-01602, 2023 WL 1818381, at *6 (D.N.J. Feb. 8, 2023) (quoting *Printing Mart-Morristown v. Sharp Elecs. Corp.*, 563 A.2d 31, 38 (N.J. 1989)).

In *Lamorte Burns & Co. v. Walters*, for example, the New Jersey Supreme Court held that the "defendants' taking of plaintiff's confidential and proprietary property and then using it effectively to target plaintiffs' clients, is contrary to the notion of free competition that is fair." 770 A.2d at 1172.  In that case, two of the company's former employees had collected information on the company's clients with the purpose of starting their own business in direct competition. *Id.* at 1162.  The Court held that this "clearly indicate[d] malice" for purposes of a tortious interference claim and that such "conduct was not only unethical, but also unlawful in that it constituted the wrongful taking of [plaintiff's] property." *Id.* at 1172.

Here, too, Fora Financial's allegations sufficiently establish that it had a protectable economic expectation as to its current and potential customers and that Defendants' alleged actions – acquiring Fora Financial's sensitive customer information and then reselling it to competitors – may have maliciously interfered with that expectation.  That said, the claim must be dismissed at this time because Fora Financial has not sufficiently pled loss and causation.

For loss and causation, a plaintiff must plead "facts which, in themselves or by the inferences which may be legitimately drawn . . . , would support a finding that, except for the tortious interference by the defendant . . . , plaintiff would have . . . made a profit." *McCue v. Deppert*, 91 A.2d 503, 505-06 (N.J. Super. Ct. App. Div. 1952); *see also Printing Mart*, 563 A.2d at 41 (For causation and damage, "the complaint [must] allege[] sufficient facts showing . . . 'that if there had been no interference there was a reasonable probability that the victim of the interference would have received the anticipated economic benefits.'" (quoting *Leslie Blau Co. v. Alfieri*, 384 A.2d 859, 865 (N.J. Super. Ct. App. Div. 1978))).

While the pleading standard is not exacting, many courts in this Circuit have ruled that it requires, at minimum, the identification of a single, specific existing or prospective customer lost as a result of the alleged interference. *See, e.g.*, *Am. Millennium Ins. Co. v. First Keystone Risk Retention Grp., Inc.*, 332 F. App'x 787, 790 (3d Cir. 2009) ("As for tortious interference, we agree with the reasoning of the District Court and its conclusion that [plaintiff] failed to plead the claim with the requisite specificity.  In particular, we note that [plaintiff's] complaint fails to identify a single, specific customer that [plaintiff] either lost or could have acquired but for [defendant's] conduct." (citing *Printing Mart*, 563 A.2d at 37)); *MedWell, LLC v. Cigna Corp.*, Civ. No. 20-10627, 2023 WL 4045089, at *5 (D.N.J. June 16, 2023) ("Plaintiff inadequately alleges the loss of business relationships with an unknown group of patients.  Indeed, Plaintiff does not identify any individual from whom it anticipates payments."); *Tiger Supplies Inc. v. MAV Assocs. LLC*, Civ. No. 20-15566, 2022 WL 1830796, at *8 (D.N.J. June 3, 2022) ("[A]t the very least, the plaintiff must identify 'a single, specific customer' it either lost or could have acquired but for the defendant's conduct." (citations omitted)); *New Jersey Physicians United Reciprocal Exch. v. Boynton & Boynton, Inc.*, 141 F. Supp. 3d 298, 310 (D.N.J. 2015) ("[The] vague allegation that unknown, prospective customers may have been lost [is not] sufficient to survive dismissal.").

Although the Court is aware that some district courts have not required a customer to be identified at this stage, many of these courts' decisions predate the United States Supreme Court's opinions in *Twombly* and *Iqbal*, which "call[ ] for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the necessary element. *Twombly*, 550 U.S. at 556. Since then, many courts to consider tortious interference claims under the *Twombly/Iqbal* framework have found that a plaintiff must identify at least one potential customer lost as a result of the alleged interference in order for a tortious interference claim to be stated.[4] *See Magic Reimbursements LLC v. T-Mobile USA, Inc.*, Civ. No. 22-02121, 2023 WL 4866930, at *8 (D.N.J. July 31, 2023) ("Relying on the Supreme Court's opinions in *Twombly/Iqbal*, many district courts . . . have disregarded this earlier line of more lenient cases and ruled that a plaintiff must identify specific customers and/or business relationships lost . . . ." (collecting cases)).

Because Fora Financial has yet to identify a single existing or prospective customer whose business was actually lost or diminished as a result of Defendants' alleged interference, the Court finds that Plaintiff has not pled with requisite specificity the loss and causation element of its tortious interference with prospective economic advantage claim. Plaintiff merely alleges that certain of Fora Financial's "customers threatened to pull their applications" as a result of Defendants' actions, but no customer is alleged to have followed through on said threat. (ECF No. 1 ¶ 47.) Similarly, Plaintiff alleges that "[c]ertain [independent sales organizations] and brokers who were involved in facilitating Fora Financial's deals with the impacted customers stopped

---

[4]    The Court does not read the United States Court of Appeals for the Third Circuit's opinion in *Avaya* to the contrary. There, the Third Circuit noted that there was "evidence [that] could support a conclusion that [defendant's] interference resulted in [plaintiff] losing direct maintenance contracts with customers . . . given that any money earned by [defendant] must have come from [plaintiff's] pockets to at least some extent." 838 F.3d at 386. Here, in contrast, Defendants may have profited from reselling Fora Financial's customer information without Fora Financial actually losing an existing or prospective customer.

submitting applications," but no lost customer is identified.  (*Id.*; *see also id.* ¶ 93 ("ultimately caused *some customers* to switch their business and/or fail to enter into anticipated deals with Fora Financial" (emphasis added)).)  Accordingly, the loss and causation element of Plaintiff's tortious interference claim has not been plausibly pled; however, because Fora Financial may be able to cure this defect, the Court dismisses the claim without prejudice, and Plaintiff will have thirty days to file an amended complaint, if it so chooses.

### C.  REQUEST TO STAY DISCOVERY

Defendants asked the Court to stay discovery pending a ruling on their motion to dismiss.  (ECF No. 7-1 at 11.)  Because the Court has decided the motion, the request is now moot, and the Court sees no good reason to stay all discovery in this case pending a potential amendment to the Complaint as to only the tortious interference claim.  *See Udeen v. Subaru of Am., Inc.*, 378 F. Supp. 3d 330, 333 (D.N.J. 2019) ("Having filed their complaint plaintiffs have a right to move forward.").

## IV.   **CONCLUSION**

For the reasons set forth above, and other good cause shown, Defendants' Motion to Dismiss Plaintiff's Complaint (ECF No. 7) is **GRANTED** in part and **DENIED** in part.  An appropriate Order follows.

Dated:  September 14, 2023

GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE